## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

MARIO BLANCO, an individual

Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company,

Defendant.

---

## COMPLAINT AND REQUEST FOR JURY TRIAL

---

Plaintiff Mario Blanco, through his attorneys, Thomas H. Mitchiner of Mitchiner, LLC, and Steven L. Murray of Murray Law, LLC, submits his Complaint and Request for Jury Trial against Defendant Comcast Cable Communications Management, LLC, and states:

### Nature of the Case

This case is an employment dispute arising from the discriminatory, retaliatory, and unlawful treatment of Mario Blanco by Comcast Cable Communications Management, LLC [Comcast], his prior employer.

Comcast engaged in discriminatory actions against Mr. Blanco based on race, national origin, ancestry, ethnicity, disability, and retaliation for engaging in lawfully protected activities.

Comcast discriminated against Mr. Blanco in the terms and conditions of his employment. Comcast subjected Mr. Blanco to a racially hostile work environment.

Comcast did not protect Mr. Blanco from racial discrimination by one or more customers, denied him a reasonable accommodation to his disability, and terminated his employment.

### Jurisdiction and Venue

1.      This case is brought under (A) Title VII of the Civil Rights Act of 1964, as amended [Title VII], 42 U.S.C. Sections 2000e, et seq., and amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981a (a)(1)(2), (b)(1)-(4), (c)(1), (d)(1)(2); (B) the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, et seq., as amended by the Americans with Disabilities Amendments Act of 2008, [collectively referenced as the ADA], and (C) the Civil Rights Act of 1866, 42 U.S.C. Section 1981, as amended by the Civil Rights Act of 1991 [Section 1981].

2.      Jurisdiction is proper under (A) 28 U.S.C. Sections 1331, 1343 (a) (3) (4); (B) 42 U.S.C. Sections 1988 (a)(b)(c); and (C) 42 U.S.C. Section 2000e-5(f) (1), (3), as amended by 42 U.S.C. Section 1981a (a) (1), (2).

3.      The claims in issue arose in the cities of Loveland and Fort Collins, Colorado.

4.      All claims arose in the Judicial District of this Court.

5.      Venue is proper in this Court under 28 U.S.C. Section 1391(b) (c), 42 U.S.C. Section 2000e-5(f) (3), 42 U.S.C. Section 1981, and 42 U.S.C. Section 1988(a).

### Parties

6.      Mr. Blanco is a resident of Loveland, Colorado.

7.      Mr. Blanco is an employee under Title VII and the ADA.

8.      Comcast is a Delaware corporation with its principal place of business in

Colorado located at 183 Inverness Dr. W, Englewood, CO 80112.

9.      Comcast is an employer under Title VII and the ADA.

10.     Mr. Blanco and Comcast are persons under Section 1981.

## Administrative Procedures

11.     Before filing this action, Mr. Blanco timely, properly, and lawfully exhausted all required administrative prerequisites and remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission. [EEOC].

12.     On May 21, 2021, the EEOC mailed a "Notice of Right to Sue" letter to Mr. Blanco for EEOC Charge No. 541-2020-01496.  This action is timely filed because it is filed within ninety days of Ms. Blanco's receipt of the Notice of Right to sue letter.

## General Allegations

13.     Mr. Blanco is a 53-year-old, disabled, Hispanic male.

14.     Mr. Blanco is a distinguished military veteran. He served with the U.S. Army and U.S. Navy, and he was honorably discharged from each branch of service.

15.     Mr. Blanco served Comcast as a dedicated employee from August 1999 to October 21, 2019, the date of his discharge from employment.

16.     At the time of his discharge, Mr. Blanco held the position of Communications Technician 4 - Advanced.

17.     As a disabled veteran, Mr. Blanco suffers from migraine headaches, severe pain, depression, anxiety, high blood pressure, and post-traumatic stress disorder [PTSD].

18.     Mr. Blanco is currently being treated for migraine headaches, severe pain, depression, anxiety, high blood pressure, and PTSD by a neurologist, mental health

professionals, a cardiologist, an orthopedist and a cardiorespiratory therapist.

19.    In December 2013, Mr. Blanco suffered a heart attack.

20.    After his heart attack, Mr. Blanco discussed with Jamie Robertson, a human resources official for Comcast, the stress he experienced while working in his position because of his migraine headaches, severe pain, depression, anxiety, high blood pressure, and PTSD, and the racial/national origin discrimination he confronted. Mr. Blanco asked Ms. Robertson for help in finding a less stressful position with Comcast.

21.    After performing a ride along with Mr. Blanco and after speaking with him, Ms. Robertson, suggested he apply for a supervisor position.

22.    Mr. Blanco began applying for supervisor positions in 2013.

23.    In January 2018, Mr. Blanco suffered injuries from a workplace accident. This accident caused him to suffer severe and continuing pain from hyperextended knees and lower/middle back pain.

24.    The injuries caused by the workplace accident exacerbated Mr. Blanco's prior conditions: migraine headaches, severe pain, depression, anxiety, high blood pressure, and PTSD.

25.    Because of Mr. Blanco's health and injuries, he did not work from approximately January 2018 until May 2018.

26.    On or about February 3, 2019, Mr. Blanco suffered a second heart attack.

27.    Beginning in May 2019 and continuing, Mr. Blanco had multiple and/or continuing discussions with Vicki Baca, an official in Comcast's human resources Department. In these discussions, Mr. Blanco made repeated requests for reasonable accommodation in his workplace.

4

28.     One of Mr. Blanco's requested accommodations was an assignment to work at a Comcast store. Ms. Baca told Mr. Blanco that she would investigate the requested accommodation.

29.     In response to Mr. Blanco's accommodation requests, Comcast did not: (1) participate in the required mandated interactive process; and/or (2) grant Mr. Blanco any reasonable accommodation.

30.     At the time of these discussions, Mr. Blanco could fully perform his duties with reasonable accommodation.

31.     Mr. Blanco worked in non-accommodated positions from July 2019 through August 6, 2019.

32.     On August 6, 2019, Mr. Blanco suffered another severe adverse medical episode. The episode caused Mr. Blanco to suffer exacerbating pain in his back generated from the migraine condition, and numbness mimicking a stroke.

33.     Following his discharge, Mr. Blanco discussed with Ms. Baca, a Comcast HR official, issues about discharge, employment status, and/or retirement.

34.     In Mr. Blanco's discussions with Ms. Baca, Comcast, through Ms. Baca, offered him these terms: Mr. Blanco would retire; and Comcast would provide him: (A) his vacation pay; (B) a monthly stipend [Comcast did not specify the amount and/or the period for payment of the stipend payments]; and (C) five years of free cable service.

35.     Comcast provided him with contact telephone numbers to finalize the agreement.

36.     Mr. Blanco called the numbers provided by Comcast; however, he could not speak to anyone to learn the details of the proposal and complete the agreement.

37.     The above agreement was never finalized.

38.     About two weeks after the discussions with Ms. Baca, Comcast sent Mr. Blanco a letter terminating his employment.

39.      Comcast terminated Mr. Blanco's employment on October 21, 2019.

40.     Stan Riefsneider, a white male, served as Mr. Blanco's manager for the entire time Mr. Blanco worked for Comcast.

41.     Mr. Riefsneider, over a significant period of time, took no action to protect Mr. Blanco from customer racial abuse and discrimination.

42.     Mr. Blanco complained to Mr. Riefsneider concerning the racially offensive conduct he experienced from customers. Mr. Riefsneider ignored Mr. Blanco's complaints.

43.     Mr. Riefsneider told Mr. Blanco to "take it or leave it, there are other jobs out there." Mr. Blanco took Mr. Riefsneider's comment about "other jobs" as telling Mr. Blanco that he either had to take the racial abuse or he could find another job outside of Comcast.

44.     Mr. Riefsneider took no action to protect Mr. Blanco from customer racial abuse and discrimination.

45.     Mr. Blanco's complaints included incidents where customers would not allow Mr. Blanco to perform his job, combined with racial indignities. Mere examples include a customer refusing to open the door for Mr. Blanco and/or a customer directing him to go to the back of the house, and then refusing to permit him to enter the house.

46.     Mr. Blanco suggested to Mr. Riefsneider that Comcast hold diversity and inclusion training. This training would be Comcast's effort to inform the public and the

business world that Comcast had Hispanic and other minority employees.

47.   Mr. Riefsneider told Mr. Blanco that Comcast did not hold and would not hold diversity and inclusion training.

48.   In addition to complaining to Mr. Riefsneider about the racial abuse he experienced, he also complained to his supervisors, Johnny Dodero, a white male, Michael Porter, a white male, and Tim Huxell, a white male.

49.   None of Mr. Blanco's supervisors took any action to protect him from the racial abuse.

50.   Towards the end of his employment with Comcast, Mr. Blanco told Mr. Huxell about racial abuse he experienced while working on a job. Mr. Blanco was forced to confront third-parties, workers from another employer working in the same physical space where he was working, making offensive racist statements. Mr. Blanco asked Mr. Huxell to transfer him from the job or to have another worker come with him. Mr. Huxell refused to take any of the requested actions. Mr. Huxell told Mr. Blanco "To get it done and to get out of there."

51.   Mr. Blanco observed customer work orders in which customers told Comcast to not send any Mexicans or Blacks on the service call. Mr. Blanco reported this incident to Mr. Riefsneider and Mr. Blanco's supervisors and they did not take any action to remedy the offensive racist language.

52.   As a direct, foreseeable, and proximate result of Comcast's intentional unlawful conduct, Mr. Blanco suffered injuries, damages, and other losses.

53.   Mr. Blanco's damages include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and the loss of wages, earnings, income,

diminution of earning capacity, actual and/or potential retirement benefits, loss of employment, future pecuniary losses, and other damages to be determined at trial.

54.     In Comcast's discriminatory and retaliatory actions, and denial of Mr. Blanco's rights under Title VII, Section 1981, CADA, the ADA, Comcast acted willfully, with malice or reckless indifference to his protected rights under federal and Colorado law.

## First Claim
### [Disability Discrimination-ADA]

55.     Mr. Blanco incorporates and restates all allegations previously asserted as though incorporated herein.

56.     The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. Section 12112(a).

57.     The ADA prohibits Comcast from discriminating against Mr. Blanco: (1) regarding his compensation, terms, conditions, or privileges of employment, because of his disability and/or (2) by limiting, segregating, or classifying him in any way, which would deprive, or tend to deprive him of employment opportunities, or otherwise adversely affect his status as an employee, because of his disability.

58.     Mr. Blanco is a member of the ADA-protected class.

59.     At all times at issue herein, Mr. Blanco was a "qualified individual" under the ADA.

60.     From August 1999 to October 21, 2019, the date of Mr. Blanco's discharge from employment, he was an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment position he held with Comcast; and (2) possessed the requisite skill, experience, education, and other job-

related requirements of the employment position he held with Comcast.   42 U.S.C. Section 12111(8).

61.      Mr. Blanco has a disability under the ADA. 42 U.S.C. Section 12101(1)(A).

62.      Mr. Blanco has post-traumatic stress disorder, and he suffers from migraine headaches, severe pain, anxiety, severe and continuing pain from hyperextended knees, and lower/middle back pain.

63.      Mr. Blanco has physical or mental impairments that substantially limit one or more or of his major life activities 42 U.S.C. Section 12101(2) (A).

64.      Mr. Blanco's medical condition substantially limits one or more of his major life activities, including concentrating, thinking, and communicating. 42 U.S.C. Section 12102(2)(B).

65.      Comcast knew of Ms. Blanco's medical condition and his disability.

66.      Comcast's treatment of Ms. Blanco, including his discharge from employment, was because of Mr. Blanco's disability and protected status under the ADA.

67.      Comcast discriminated against Mr. Blanco: (1) regarding his compensation, terms, conditions, or privileges of employment because of his disability; and/or (2) by limiting, segregating, or classifying him in any way, which would deprive, or deprive him of employment opportunities, or otherwise hurt his status as an employee, because of his disability.

68.      Comcast's unlawful, intentional disability discrimination was created, perpetrated, and/or tolerated by Comcast's officials and managers, all having specific knowledge or reason to know of Mr. Blanco's disability and the discriminatory actions set forth herein.

69.     Comcast's treatment of Ms. Blanco constitutes intentional, unlawful disability discrimination in violation of the ADA.

### Second Claim
### [Disability Discrimination - Regarded as Disabled-ADA]

70.     Mr. Blanco incorporates and restates all allegations asserted as though incorporated herein.

71.     The ADA's definition of disability and discrimination includes discrimination against a person based on the person being regarded as having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. Section 12101(2) (A).

72.     An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he has been subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

73.     Mr. Blanco meets the standard of being regarded as having a physical or mental impairment under the ADA.

74.     At all times, Mr. Blanco was a "qualified individual" under the ADA.

75.     Mr. Blanco was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions she held with Defendant. 42 U.S.C. Section 12111(8).

76.     Mr. Blanco was an individual who could perform the essential functions of the employment position he held with Comcast, with or without reasonable accommodation.

77. Comcast engaged in intentional, willful, and unlawful disability discrimination against Mr. Blanco in violation of the ADA based on Comcast regarding Mr. Blanco as having a physical or mental impairment that substantially limits one or more of his major life activities.

### Third Claim
### [Disability Discrimination - Record of Disability]

78. Mr. Blanco incorporates and restates all allegations previously asserted as though incorporated herein.

79. The ADA's definition of disability and discrimination includes discrimination against a person based on the person's record of having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. Section 12101(2) (A).

80. As set forth, Mr. Blanco has a record of mental and physical impairments which substantially affect one or more of major life activities, including performing manual tasks, seeing, concentrating, thinking, communicating, and working. 42 U.S.C. Section 12102(2)(B).

81. At all times in issue herein, Mr. Blanco was a "qualified individual" under the ADA. Mr. Blanco was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions she held with Defendant. 42 U.S.C. Section 12111(8).

82. Comcast engaged in intentional, willful, and unlawful disability discrimination against Mr. Blanco in violation of the ADA, including but not limited to discriminating against Mr. Blanco based on his record of a disability.

## Fourth Claim
### [Disability Discrimination - Failure to Accommodate]

83.    Mr. Blanco incorporates and restates all allegations asserted as though incorporated herein.

84.    The ADA forbids discrimination against a "qualified individual on the basis of disability." 42 U.S.C. Section 12112(a).

85.    Prohibited discrimination includes not making reasonable accommodations, 42 U.S.C Section 12112(b)(5)(A), such as part-time or modified work schedules. 29 C.F.R. Section 1630.2(o)(2)(ii).

86.    The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. Section 12102(1)(A).

87.    Mr. Blanco is a qualified individual with a disability.

88.    Comcast denied Mr. Blanco's requests for a reasonable accommodation.

89.    Comcast cannot meet its burden to demonstrate that Mr. Blanco's requested accommodation would have imposed an undue hardship on Comcast. 42 U.S.C. Section 12112(b)(5)(A); 29 C.F.R. Section 1630.9

90.    At all times herein, Mr. Blanco was a qualified person with a disability under the ADA.

91.    Comcast knew of Mr. Blanco's disabilities and his requests for a reasonable accommodation.

92.    Comcast unreasonably failed to provide Mr. Blanco the reasonable accommodation.

93.     Comcast's refusal to provide the reasonable accommodations in issue to Mr. Blanco, constitutes intentional, willful, and unlawful disability discrimination in violation of the ADA.

## Fifth Claim
## [ADA Retaliation: Terms & Conditions and Discharge]

94.     Mr. Blanco incorporates and restates all allegations asserted as though contained herein

95.     Mr. Blanco asserts a claim of unlawful retaliation in violation of the ADA. 42 U.S.C. Section 12203(a).

96.     The ADA prohibits Comcast from unlawful retaliation and discrimination against Ms. Blanco because she engaged in activities protected by the ADA. 42 U.S.C. Section 12203(a)

97.     The ADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA. 42 U.S.C. Section 12203(a).

98.     Mr. Blanco engaged in protected activities under the ADA by repeatedly requesting Comcast to provide him a reasonable accommodation.

99.     Comcast knew of Mr. Blanco's protected ADA activities.

100.    Comcast engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation against Mr. Blanco.

101.    Comcast's intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Comcast officials, managers, and employees.

13

102.    Comcast, contemporaneously with, and/or immediately after, Mr. Blanco's repeated, protected activities, took actions against him that a reasonable employee would have found materially adverse.

103.    Comcast retaliated against Mr. Blanco by subjecting him to intentional, cumulative, and increasingly severe, materially adverse, and discriminatory actions.

104.    Comcast denied Mr. Blanco's requests for a reasonable accommodation.

105.    Comcast terminated Mr. Blanco's employment.

106.    A causal connection, and/or a but-for casual connection, exists between Mr. Blanco's protected activities and the unlawful materially adverse employment actions taken by Comcast against Ms. Blanco.

107.    Comcast's treatment of Mr. Blanco, considered in its totality and in a cumulative manner, as stated in the above paragraphs of this claim and Complaint, constitutes unlawful, direct, intentional, materially adverse, retaliatory, and discriminatory actions prohibited by the ADA.

### Sixth Claim
### [National Origin Discrimination - Title VII]

108.    Mr. Blanco incorporates and restates all allegations previously asserted as though stated herein.

109.    Under Title VII, it is unlawful for an employer to: (1) discharge any individual or otherwise discriminate against any individual regarding his compensation, terms, conditions, or privileges of employment because of the individual's national origin; or (2) limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise hurt an employee's status as an employee, because of the individual's national origin. 42 U.S.C. Section

2000e-2(a)(1)(2).

110. Mr.  Blanco is Hispanic.

111.  Mr. Blanco is a member of Title VII's protected class based on his national origin.

112.   Comcast discriminated against Mr. Blanco because of his protected Title VII status by subjecting him to adverse treatment about his compensation, terms, conditions, and privileges of employment, including but not limited to discharging him from employment.

113. Comcast discriminated against Mr. Blanco by limiting, segregating, or classifying him in a way that deprived him or tended to deprive him of employment opportunities or adversely affected his status as an employee because of his protected status under Title VII.

114.   Mr. Blanco performed all his duties satisfactorily throughout his employment with Comcast.

115.   Mr. Blanco was qualified to hold the position he held with Comcast when he was discharged.

116.   Comcast's discriminatory treatment of Mr. Blanco includes refusing to protect him from racial discrimination from customers and discharging him for employment.

117. Comcast's treatment of Blanco constitutes intentional, unlawful discrimination because of his protected status in a Title VII protected class.

### Seventh Claim
### [Race, Ethnicity, Ancestry Discrimination – Section 1981]

118.   Mr. Blanco incorporates and restates all allegations asserted as though

stated herein.

119. Section 1981 prohibits discrimination against persons based on race, including identifiable classes of persons subjected to intentional discrimination solely because of their race, ancestry, or ethnic characteristics.

120. Mr. Blanco is in the Section 1981 protected class based on his race, and ancestry, and ethnicity.

121. Mr. Blanco and Comcast are "persons" under Section 1981.

122. Comcast, intentionally discriminated against Mr. Blanco because of – but for - his Section 1981 protected class status, regarding his compensation, terms, conditions, or privileges of employment; and/or by limiting, segregating, or classifying him in a way, which deprived, or tended to deprive him of employment opportunities, or otherwise adversely affect his status as an employee because of - but for, his protected status under Section 1981.

123. Comcast, intentionally deprived Mr. Blanco of the same rights and working conditions as persons and employees not in the Section 1981 protected class, in the performance, enjoyment, continuation, and all the benefits and privileges of his employment relationship with Comcast, in violation of Section 1981.

124. Comcast's discriminatory treatment of Mr. Blanco includes refusing to protect him from racial discrimination from customers and discharging him for employment.

125. Comcast, engaged in direct, continual, increasing, intentional, and willful discrimination in taking adverse unlawful employment practices against Mr. Blanco under Section 1981.

**Eighth Claim**
**[Hostile Work Environment – Title VII]**

126. Mr. Blanco incorporates and restates all allegations asserted as though stated herein.

127. Title VII prohibits racial discrimination and harassment in the form of a hostile work environment, based on race and national origin.  42 U.S.C. Sections 2000e-2(a)(1).

128. Comcast, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment, based upon race, against Mr. Blanco.

129. The conduct by Comcast's customers and vendors, and comments directed at and about Mr. Blanco and minorities, and Comcast's failure to help Mr. Blanco, subjected him to materially adverse conduct which was unwelcome and offensive.

130. The conduct by Comcast's customers and vendors and comments directed at and about Mr. Blanco and minorities, and not remedied by Comcast subjected him to materially adverse conduct which: (1) was sufficiently severe and/or pervasive as to adversely alter the terms, conditions, and privileges of Mr. Blanco's employment; (2) created an abusive working environment for Mr. Blanco, involving discriminatory intimidation, ridicule, and insult, causing him emotional and/or physical harm; and (3) was racial or national origin disparagement, and/or specifically and solely directed at Mr. Blanco, because of his Title VII protected class.

131. Mr. Blanco is a Hispanic male.

132. Mr. Blanco informed his manager and supervisors of the language and comments which were offensive on the basis of race and national origin.

133. Comcast condoned the racial harassment and hostile environment of Mr. Blanco by refusing to permit Mr. Blanco to transfer to a Comcast/Xfinity store and refusing

to take any steps to end the racial harassment and hostile environment.

134. Comcast is liable for subjecting Mr. Blanco to the hostile work environment because it knew about the racially hostile environment and did not take any actions to protect Mr. Blanco from the racially hostile environment.

135. Comcast failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

136. Each successive episode of Comcasts cumulative conduct against Mr. Blanco, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created, exceeded the sum of any individual episode.

137. Comcasts treatment of Mr. Blanco constitutes: (1) an intentional, unlawful, hostile work environment, based on race and national origin, and (2) intentional, unlawful discriminatory practices.

### Ninth Claim
**[Hostile Work Environment – Section 1981]**

138. Mr. Blanco incorporates and restates all allegations asserted as though stated herein.

139.  Section 1981 prohibits discrimination and harassment in the form of a hostile work environment, based on ethnicity and ancestry.  42 U.S.C. Section 1981.

140. Comcast, in consideration of all the facts, in a cumulative manner, intentionally created, tolerated, and perpetuated a hostile and abusive work environment, based upon ethnicity and ancestry, against Mr. Blanco.

141. The conduct by Comcast's customers and vendors, and comments directed at and about Mr. Blanco and minorities, and Comcast's failure to help Mr. Blanco,

subjected him to materially adverse conduct which was unwelcome and offensive.

142. The conduct by Comcast's customers and vendors and comments directed at and about Mr. Blanco and minorities, and not remedied by Comcast subjected him to materially adverse conduct which: (1) was sufficiently severe and/or pervasive as to adversely alter the terms, conditions, and privileges of Mr. Blanco's employment; (2) created an abusive working environment for Mr. Blanco, involving discriminatory intimidation, ridicule, and insult, causing him emotional and/or physical harm; and (3) was disparaging of Mr. Blanco's ancestry and ethnicity, and/or specifically and solely directed at Mr. Blanco, because of his Section 1981 protected class.

143. Mr. Blanco is a Hispanic male.

144. Mr. Blanco informed his manager and supervisors of the language and comments which were offensive on the basis of ethnicity and ancestry.

145. Comcast condoned the ancestry and ethnicity harassment and hostile environment of Mr. Blanco by refusing to permit Mr. Blanco to transfer to a Comcast store and refusing to take any steps to end the harassment and hostile environment.

146. Comcast is liable for subjecting Mr. Blanco to the hostile work environment because it knew about the hostile environment based on ethnicity and ancestry and did not take any actions to protect Mr. Blanco from the hostile environment.

147. Comcast failed to: (1) stop the materially adverse conduct in issue; and (2) implement reasonably prompt and appropriate corrective action.

148. Each successive episode of Comcasts cumulative conduct against Mr. Blanco, constituting the hostile work environment, had its predecessors, and the impact of the separate incidents accumulated such that the unlawful work environment created,

exceeded the sum of any individual episode.

149. Comcasts treatment of Mr. Blanco constitutes: (1) an intentional, unlawful, hostile work environment, based on ethnicity and ancestry, and (2) intentional, unlawful discriminatory practices.

## Request for Relief

WHEREFORE, Plaintiff, Mr. Blanco, respectfully requests:

A.      Judgment be entered against Comcast on all his claims.

B.      Judgment be entered against Comcast for back pay, wages, and all economic losses associated with Mr. Blanco's employment, under Title VII, the ADA, and 42 U.S.C. Section 1981.

C.      Judgment be entered against Comcast and damages awarded to Mr. Blanco for his hostile work environment claim under Title VII, and 42 U.S.C. Section 1981.

D.      Judgment be entered against Comcast for front pay under Title VII, the ADA CADA, and 42 U.S.C. Section 1981.

E.      Judgment be entered against Comcast for punitive and compensatory damages available to Mr. Blanco under Title VII, the ADA, and Section 1981.

F.      Judgment be entered against Comcast for attorney fees and costs available to Mr. Blanco under Title VII, 42 U.S.C. Section 1981, the ADEA, FLSA, and 42 U.S.C. Section 1988 (b)(c).

G.      Award Mr. Blanco all other legal and equitable relief, to which he is entitled under any law, this Court deems just, equitable, and proper.

## Jury Trial Request

Under Federal Rule of Civil Procure 38 (a) (b) (c), Title VII, 42 U.S.C. Section

1981a (c) (1), and 42 U.S.C. Section 1981, and all laws providing for a right to trial by jury, Mr. Blanco requests a jury trial of all claims and issues in this action.

Respectfully submitted this August 17, 2021, by:


Mitchiner Law, LLC

/s/ Thomas H. Mitchiner
Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 720-538-0371
E-mail:  tmitchiner@mitchinerlawllc.com


Murray Law, LLC

/s/ Steven Murray
Steven Murray
Murray Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 303-396-9952
E-mail: steven@smurraylaw.com


Plaintiff's Address:
3079 Nebula Court
Loveland, CO 80537