IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-02225-PAB-STV

MARIO BLANCO, an individual,

    Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant's Motion to Dismiss Complaint or, in the Alternative, to Compel Arbitration and Dismiss Complaint [Docket No. 11]. In its motion to dismiss, Comcast Cable Communications Management, LLC ("Comcast") seeks to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(5), arguing that plaintiff has failed to properly serve defendant or, in the alternative, that plaintiff should be compelled to arbitrate his claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. Docket No. 11 at 1.

**I. BACKGROUND**[1]

Plaintiff worked for defendant from August 1999 until October 21, 2019. Docket No. 1 at 3, ¶ 15. Comcast introduced an alternative dispute resolution program (the

---

[1] A party filing a Rule 12(b)(1) motion may challenge the court's subject-matter jurisdiction through a facial or factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the

"Program"), called Comcast Solutions, applicable to employees in Colorado in May 2013.  Docket No. 11 at 2.  The Program requires arbitration for employment claims by employees.  *Id*. at 3.  Comcast mailed information to plaintiff about Comcast Solutions on May 1, 2013, including a brochure describing the Program (the "Brochure").  *Id*.; Docket No. 11-1 at 3, ¶ 7.  Defendant required employees who did not want to participate in the Program to opt out by June 5, 2013.  Docket No. 11 at 3.  An employee who did not opt out of the Program was enrolled in it.  *Id.*

The Brochure provided to plaintiff stated:

[t]o participate in the Comcast Solutions program, both you and the company waive the right to a civil action or a jury trial for any covered claims. . . .  All covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.

Docket No. 11-3 at 10.  The Brochure stated that the Program covered "claims for back pay, commissions or failure to pay overtime, claims for discrimination based on race, gender, age, religion, disability or any other protected class, and claims for sexual or other types of unlawful harassment."  *Id.* at 4.  Comcast sent plaintiff an email to his work address on May 30, 2013 reminding him that he

---

allegations in the complaint and adduces evidence to contest jurisdiction." *Id*. (citations omitted).  The Court finds that defendant makes a factual attack and considers the parties exhibits in deciding the portion of defendant's motion seeking dismissal under Rule 12(b)(1).  *See Morrison v. Colorado Permanente Med. Grp., P.C.*, 983 F. Supp. 937, 939 (D. Colo. 1997) ("In response to a Rule 12(b)(1) motion, the district court has wide discretion to consider affidavits, documents, and even hold a limited evidentiary hearing.").

would be enrolled in the Program if he did not opt out by June 5, 2013.  Docket No. 11-5 at 2, 4.  Plaintiff did not opt out of the Program.  Docket No. 11 at 4.

On August 17, 2021, plaintiff initiated this action by filing a complaint against Comcast alleging nine claims under Title VII, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1981.  Docket No. 1.  Mr. Blanco alleges that defendant discriminated against him on the basis of disability, national origin, race, ethnicity, ancestry, and exposed him to a hostile workplace unlawfully.  *Id.* at 8-20, ¶¶ 55-149.  On December 6, 2021, the assigned magistrate judge issued an order for plaintiff to show cause why he had not served Comcast.  Docket No. 6 at 1.  Plaintiff responded to the magistrate judge's order on December 10, 2021, stating that defendant "has been served in this action and is aware of the pending lawsuit."  Docket No. 7 at 1, ¶ 4.  On December 14, 2021, the magistrate judge ordered plaintiff to file proof of service by December 22, 2021.  Docket No. 8.  On December 22, 2021, plaintiff filed proof of service, representing that plaintiff served defendant on December 21, 2021.  Docket No. 9 at 1.  On January 11, 2022, Comcast filed a motion to dismiss plaintiff's complaint.  Docket No. 11.  Plaintiff filed a response opposing defendant's motion, and defendant filed a reply.  Docket Nos. 21, 24.

## II. LEGAL STANDARD

A motion under Rule 12(b)(5) is the "proper vehicle for challenging the mode of delivery or the lack of delivery" of a summons.  4B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1353 (4th. ed.); *see also Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994).  In opposing a motion to dismiss for insufficient service of process, "plaintiff bears the burden of making a prima

facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over the defendant." *Allen v. United Props. & Const.*, No. 07-cv-00214-LTB-CBS, 2008 WL 4080035, at *9 (D. Colo. Sept. 3, 2008) (quoting *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)). Plaintiff must demonstrate that the procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987).

The Federal Arbitration Act ("FAA") "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). "'The Supreme Court has long recognized and enforced' § 2 of the FAA as 'a liberal federal policy favoring arbitration agreements,'" and ruled "all doubts must be resolved in favor of arbitration . . . even when the claims at issue are federal statutory claims." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1097 (10th Cir. 2023) (quoting *Ragab v. Howard*, 841 F.3d 1134, 1136-37 (10th Cir. 2016)).

With that said, there is no such presumption when assessing "whether there is a valid and enforceable arbitration clause in the first instance." *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1108 (D. Colo. 1999) (citing *Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)). "'[T]he question of arbitrability – whether a [contract] creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the

arbitrator.'" *Riley Mfg. Co., Inc.*, 157 F.3d at 779 (quoting *AT & T Technologies v. Communications Workers,* 475 U.S. 643, 649 (1986)); *see First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995) ("[T]he law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' – for in respect to this latter question the law reverses the presumption.").

### III. ANALYSIS

#### A. Service of Process

Under Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff shows good cause for the delay. A court applying these rules engages in a two-part inquiry. *See Moore v. Teamsters Local 41*, 2015 WL 859074, at *2 (D. Kan. Feb. 27, 2015). First, the court determines whether the plaintiff has shown good cause for his failure to timely serve the defendant. *Id.* If good cause is shown, then an extension of the time for service of process is mandatory. *See* Fed. R. Civ. P. 4(m); *see also Thunder Mountain Custom Cycles, Inc. v. Thiessen*, No. 06-cv-02527-EWN-BNB, 2008 WL 618898, at *6 (D. Colo. Mar. 5, 2008). If good cause is not shown, the court proceeds to the second step of the analysis and determines whether a permissive extension is warranted. *See Moore*, 2015 WL 859074, at *2. "In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and

due process requirements so as to permit the court to exercise personal jurisdiction over defendant." *Allen v*, 2008 WL 4080035, at *9 (quoting *Fisher*, 531 F. Supp. 2d at 1260).

Comcast argues it was not timely served under Rule 4. Plaintiff responds that defendant was properly served under Fed. R. Civ. P. 4(d). Rule 4(d) provides that a plaintiff may request a waiver of service from a corporation and states that, when plaintiff files a waiver, "proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4). Plaintiff claims he sent a request for waiver to defendant on or about August 25, 2021, and that defendant never returned a waiver to plaintiff. Docket No. 21 at 3-4. Plaintiff's August 25, 2021 request that Comcast waive service is not sufficient service upon defendant. *See Bernard v. Husky Truck Stop*, 45 F.3d 439, 1995 WL 4087, at *1 (10th Cir. Jan. 6, 1995) (unpublished table decision) ("Compliance with the waiver provision requires that the waiver be executed by the defendant, returned to the plaintiff, and filed by the plaintiff with the court.").

Plaintiff asserts that the magistrate judge extended plaintiff's deadline to provide proof of service to December 22, 2021 and that he filed proof of service on December 22, 2021. Docket No. 21 at 4-5. Actually, the magistrate judge ordered plaintiff to file proof of service, but did not state that plaintiff's deadline to serve defendant was extended. Docket No. 6 at 2. Plaintiff's deadline to serve defendant was November 15, 2021, 90 days after he filed his complaint. Plaintiff does not prove that defendant was served within 90 days. Accordingly, plaintiff did not serve defendant in compliance with Fed. R. Civ. P. 4.

When service is insufficient under Rule 4, the Court first considers whether a mandatory extension of time for service is warranted. *Espinoza v. United States*, 52 F. 3d 838, 841 (10th Cir. 1995). A mandatory extension of time is required when a plaintiff shows good cause for a failure to serve defendant. *Id.* Plaintiff states the cause for his failure to serve defendant was defendant's failure to return a waiver of service of a summons. Docket No. 21 at 5. Plaintiff states he requested a waiver from Comcast on August 25, 2021. *Id.* at 4. Under Rule 4(d), defendant's response to the request[2] was due 30 days later, Fed. R. Civ. P. 4(d)(1)(F), on September 24, 2021, well in advance of plaintiff's November 15, 2021 deadline to effectuate service. Plaintiff offers no reason why he could not complete service after September 24, 2021 and before November 15, 2021. *See id.* at 4-6.

Plaintiff also offers no support for his contention that a defendant's failure to return a waiver of service constitutes a good cause. *See id.* at 4-5. Several courts have ruled that a defendant's failure to waive service does not constitute good cause for plaintiff failing to effectuate service within ninety days. *Fed. Prac. & Proc.* § 1137 ("Federal courts . . . have rejected excuses based on a failure to receive a waiver of formal service."); *see Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 755 (E.D. Ky. 2011) (collecting cases). Accordingly, the Court finds plaintiff should not be granted a mandatory extension of time to serve defendant based on good cause for delay.

After determining that there is not good cause for a mandatory extension of time, the Court considers whether it should grant a permissive extension under Rule 4.

---

[2] If a defendant fails to sign and return a waiver form, the court must impose on the defendant the expense of plaintiff later serving the defendant. Fed. R. Civ. P. 4(d)(2)(A).

7

*Espinoza*, 52 F.3d at 841. The Court considers whether any of plaintiff's claims would be time-barred if dismissed. *Id.* at 842. Plaintiff brings claims under Title VII, the ADA, and 42 U.S.C. § 1981. Plaintiff's Title VII and ADA claims are barred 90 days after receiving a right to sue letter from the EEOC. *See Riddle v. Wichita Pub. Sch., Unified, Sch. Dist. No. 259*, 2005 WL 1563444, at *4 (D. Kan. June 30, 2005) ("Under 42 U.S.C. § 2000e–5(f)(1), plaintiff had 90-days from that date to file his Title VII claim. . . . Likewise, his ADA claim . . . imposes the same 90–day limitations period."). Plaintiff's claims under § 1981 have a limitation of four years.[3] Plaintiff received his EEOC letter on May 21, 2021, Docket No. 1 at 3, ¶ 12, meaning his 90-day period expired August 19, 2021. Plaintiff filed his complaint two days before his claims became time-barred. The effect of dismissing plaintiff's claims without prejudice would be to effectively dismiss plaintiff's claims with prejudice because all but his § 1981 claims would be time-barred. The Court finds this factor sufficient to grant a permissive extension. *See Padilla v. Walgreen Hastings Co.*, 2009 WL 2951025, at *6 (D.N.M. Aug. 11, 2009) (granting permissive extension where plaintiff attempted to obtain a waiver of service and her claims would be time-barred if dismissed). Accordingly, the

---

[3] "[C]laims under § 1981 relying upon discrimination in *contract formation,* . . . would be governed by [Colorado's] statutes of limitations, here two years. Claims relying upon an employer's *post-formation conduct,* however, would be subject to the four-year statute of limitations." *Cross v. The Home Depot*, 390 F.3d 1283, 1288 (10th Cir. 2004) (emphasis in original) (citations omitted). Neither party discusses whether the two-year or four-year statute of limitations for §1981 claims applies to plaintiff. The Court presumes the four-year limit applies to plaintiff's claims as both of plaintiff's claims under § 1981 deal with discrimination after contract formation. *See* Docket No. 1 at 15-16, 18-20, ¶¶ 118-125, 138-149.

Court will retroactively extend plaintiff's time to serve defendant and accept service on December 21, 2021 as proper and deny defendant's motion under Rule 12(b)(5).

## B. Arbitration

Defendant argues that the parties should be compelled to arbitrate plaintiff's claims and that the case be dismissed for a lack of jurisdiction.[4]  Docket No. 11 at 9. The Court lacks subject matter jurisdiction over claims covered by an arbitration agreement.  *Hagerman v. United Transp. Union*, 281 F.3d 1189, 1195 (10th Cir. 2002). The decision whether to enforce an arbitration agreement requires a two-step inquiry: first, the court must determine whether the parties agreed to arbitrate the dispute, *Harrison*, 59 F.4th at 1097 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); and, second, the court must determine whether the specific dispute falls within the scope of that agreement.  *Mitsubishi Motors Corp.*, 473 U.S. at 626; *see also Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care, Inc.*, No. 09-cv-00928-CMA-MEH, 2010 WL 1348326, at *5 (D. Colo. Mar. 30, 2010).  "'The Supreme Court has long recognized and enforced' § 2 of the FAA as 'a liberal federal policy favoring arbitration agreements,'" and ruled "all doubts must be resolved in favor of arbitration . . . even when the claims at issue are federal statutory claims." *Harrison*,

---

[4] When an action is properly referable for arbitration and any party requests a stay, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (stating that, upon a motion to stay pending arbitration, the "proper course . . . would have been for the district court to grant Defendant's motion and stay the action pending arbitration" rather than dismiss the action).  In this case, neither party requests a stay in this case, and so dismissal is appropriate.

9

59 F.4th at 1097 (quoting *Ragab*, 841 F.3d at 1136-37, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)).

The Court will first determine whether a valid agreement to arbitrate exists. "No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit." *Ragab*, 841 F.3d at 1137. Defendant, as the party claiming an obligation to arbitrate, has the burden of establishing that plaintiff's claims are subject to arbitration. *Stein v. Burt–Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005). State law on contract formation governs this inquiry. *Morris v. Milgard Mfg. Inc.*, No. 12-cv-01263-REB-CBS, 2012 WL 6217387, at *2 (D. Colo. Dec. 13, 2012). If defendant meets its burden, the burden shifts to plaintiff to show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Stein,* 396 F. Supp. 2d at 1213.

Comcast asserts that a valid agreement to arbitrate was created when plaintiff failed to opt out of the Program. Docket No. 11 at 12. Alternatively, Comcast argues that plaintiff's continued employment manifested his assent to the Program and arbitration agreement. *Id.* at 14. Plaintiff responds that defendant has not produced any valid arbitration agreement. Docket No. 21 at 8.

The Brochure states that, as part of the Program, employees agree to "be bound by the Comcast Solutions program for covered legal claims," that participation in the Program "waive[s] the right to a civil action or a jury trial for any covered claims," and that employees and Comcast "will be bound by the final decision of the arbitrator" under the Program. Docket No. 11-3 at 10.

Plaintiff argues that the Brochure does not constitute an agreement because plaintiff did not sign the Brochure. Docket No. 21 at 6. Colorado law and the FAA do not require a signature for an arbitration agreement to be valid. *See E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010) (under Colorado law, "the lack of signature in and of itself does not invalidate an otherwise enforceable agreement to arbitrate"); *Hickerson v. Pool Corp.*, No. 19-cv-02229-CMA-STV, 2020 WL 5016938, at *4 (D. Colo. Aug. 25, 2020) (observing that, under Colorado law, "arbitration agreements must be in writing, but they need not be signed"); *Todd Habermann Constr., Inc. v. Epstein*, 70 F. Supp. 2d 1170, 1174 (D. Colo. 1999) (observing that, under the FAA, a "written arbitration agreement does not have to be signed to be enforceable").

Additionally, plaintiff does not address defendant's argument that his continued employment can constitute his assent to the agreement even if his initial failure to opt out does not demonstrate his assent. Comcast mailed Program information to plaintiff on May 1, 2013. Docket No. 11 at 3; Docket No. 11-1 at 3, ¶ 7. Defendant required employees who did not want to participate in the Program to opt out by June 5, 2013. Docket No. 11 at 3. Comcast sent plaintiff an email to his work address on May 30, 2013 reminding him that he would be enrolled in the Program if he did not opt out by June 5, 2013. Docket No. 11-5 at 2-4. Plaintiff did not opt out of the Program. Docket No. 11 at 4.

Plaintiff continued to work for Comcast until October 21, 2019. Docket No. 1 at 3, ¶ 15.

In *Scarpitti v. Charter Comms. Inc.*, No. 18-cv-02133-REB-MEH, 2018 WL 10806905, at *3 (D. Colo. Dec. 7, 2018), the court, applying Colorado law, ruled that assent to arbitration can be shown where an employee does not opt out of a program and continues to work for his employer. In that case, an employer sent an email to plaintiff stating that an arbitration program was the "exclusive means of resolving employment-related disputes" and that employees would be enrolled in the program if they did not opt out within thirty days of the policy's implementation. *Id.* at *1-2. The court ruled that plaintiff's continued employment after failing to opt out of the arbitration program manifested his assent to the agreement regardless of his "purported ignorance of the policy, whether willful or otherwise." *Id.* at *3 (quoting *Morris*, 2012 WL 6217387, at *3); *see also Zynex Med., Inc. v. Frabotta*, No. 21-cv-01076-RMR-KLM, 2022 WL 1211876, at *4 ("Under Colorado law, [] continued employment constitutes sufficient consideration for entering into an arbitration agreement.").

Plaintiff claims that he did not "agree or assent to any terms in the Brochure," but does not explain why his continued employment was not an indication of his assent. Docket No. 21 at 9. The Court agrees with defendant that, under Colorado law, a failure to opt out of an arbitration agreement and plaintiff's continued employment can constitute assent. Plaintiff manifested his assent to a valid arbitration agreement either through his failure to opt out of the Program or through his continued employment. The Court finds the Brochure constitutes a valid arbitration agreement and that defendant has met its burden at the first step.

12

Plaintiff argues that even if the Program otherwise constitutes a valid arbitration agreement, it is illusory and unenforceable since it provides unilateral power to Comcast to change the terms of the agreement. *Id.* at 9-12. Plaintiff correctly notes that an arbitration agreement that binds one party and not the other is illusory and unenforceable. *See Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1202-1203 (D. Colo. 2001) (applying Colorado law). Plaintiff relies on language from an acknowledgment form defendant provided in 2014 and 2015 stating that defendant may "change or revise the Code of Conduct and/or the Employee Handbook at any time in its sole discretion and without notice." Docket No. 21 at 10; Docket No. 11-6 at 2, 4.

Plaintiff does not explain why the language he identifies applies to the Program. He states defendant relies on the same acknowledgement form to show that plaintiff read the materials related to the Solutions Program. Docket No. 21 at 10. The acknowledgement form asks plaintiff to confirm he understood "the Code of Conduct and Employee Handbook []and all related content, including, . . .the Comcast Solutions Program" provide information on his employment. Docket No. 11-6 at 2, 4. In a separate provision, the acknowledgement form states defendant retains the right to modify the Code of Conduct and Employee Handbook without mention of any related content, including the Program. *Id.* The acknowledgement form states that related content is included with the Employee Handbook and the Code of Conduct. *See id.* Plaintiff does not explain why the two provisions should be read in the same manner even though the provision on related content explicitly names the Program while the sentence on modification does not. Plaintiff has not identified language in the contract that supports his reading of the acknowledgement form.

13

Additionally, language in more recent acknowledgement forms sent to plaintiff directly contradict plaintiff's assertion.  In 2016 and 2017, similar acknowledgement forms state defendant does not retain the power to unilaterally amend the Program.  *Id.* at 6, 8.  Plaintiff argues that the acknowledgement forms are standardized documents that should be construed against defendant as the drafter, but does not provide any construction of the documents that could support plaintiff's reading.  Docket No. 21 at 9.  Plaintiff has failed to demonstrate that defendant retained an ability to unilaterally amend the Program.  Accordingly, the Court will not decline to enforce the agreement for this reason.

Finally, plaintiff argues that any contract is unenforceable because plaintiff is prevented from vindicating his statutory rights.  *Id.* at 12.  Under the effective vindication exception to the FAA, a court may invalidate an arbitration agreement if the agreement operates "as a prospective waiver of a party's *right to pursue* statutory remedies."  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi*, 473 U.S. at 637 n.19).  While the FAA provides a presumption in favor of arbitration, an arbitration agreement must allow "the prospective litigant [] may vindicate [his] statutory cause of action in the arbitral forum."  *Harrison*, 59 F.4th at 1098 (quoting *Italian Colors*, 570 U.S. at 235).

Plaintiff argues that his statutory rights to depositions, written discovery, costs, attorney fees, and arbitration fees are not preserved by the arbitration agreement.  Docket No. 21 at 12.  Plaintiff's argument that his statutory right to written discovery and depositions are based on plaintiff's reading of the Comprehensive Arbitration Rules & Procedures of the Judicial Arbitration and Mediation Services ("JAMS").  *Id.*  Plaintiff

14

argues the Brochure states that Colorado employees will be covered by JAMS. *Id.* (quoting Docket No. 11-3 at 12). The Brochure does state that claims will be "decided by an independent arbitrator who is approved by the American Arbitration Association or JAMS," but does not specify the rules that plaintiff identifies will be used. Docket No. 11-3 at 2-13. Defendant asserts that it provided a full description of the Program to plaintiff several times that more fully describes the arbitration agreement, *see* Docket No. 24 at 6 n.4 (citing Docket Nos. 11-2 at 2, 11-5 at 4, 11-6 at 6, 8, 10). In its reply, Comcast includes a full description of the Comcast Solutions Program and the Arbitration Rules and Procedures that were provided to plaintiff. *See* Docket Nos. 24-2, 24-3.

Plaintiff argues that his right to take ten depositions without leave from the court under the Federal Rules of Civil Procedure is not vindicated by being allowed only one deposition under the Program. Docket No. 21 at 12-13. Plaintiff also asserts that he is not allowed written discovery to the extent allowed by the Federal Rules of Civil Procedure. *Id.* at 13. Defendant responds that the arbitration rules allow for discovery sufficient to vindicate plaintiff's rights. Docket No. 24 at 8. The full description of the Program provides that:

> Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

Docket No. 24-3 at 11. The description of the Program also states that "the Arbitrator has the discretion to order such discovery, by way of deposition,

15

interrogatory, document production, or otherwise, as the Arbitrator considers to provide for a full and fair exploration of the issues in dispute." Docket No. 24-2 at 9.  Plaintiff does not provide support for his claim that a limitation on discovery would prevent him from vindicating his statutory rights.  Parties agreeing to arbitration "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi*, 473 U.S. at 628.  Limitations on the discovery conducted in federal court are routinely allowed in arbitration agreements.  *See Bell v. Ryan Trans. Service, Inc.*, 176 F. Supp. 3d 1251, 1258 (D. Kan. 2016) (collecting cases).  Plaintiff is not barred from accessing the discovery tools he could use in court and so the limits on discovery do not create a basis to render the contract unenforceable.

Plaintiff next argues that the Program does not clearly address awards for costs.  Docket No. 21 at 13-14.  As a result, plaintiff claims he is at risk of being denied a cost award.  *Id.* at 13.  However, silence as to whether a party will bear the costs of arbitration is insufficient to render an arbitration agreement unenforceable.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000).  "[A] party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs." *Id.*  Absent some showing that plaintiff is likely to be required to bear the costs of arbitration, plaintiff has not met his burden of showing that the agreement prevents the effective vindication of his rights.

Finally, plaintiff argues that he has a right to reasonable attorney's fees at the Court's discretion as a prevailing party on his Title VII, Section 1981, and

16

ADA claims.  Docket No. 21 at 14-15.  The Tenth Circuit has ruled it is unlikely that a prospective plaintiff, "faced with the mere possibility of being reimbursed . . . , would risk advancing [ ] fees in order to access the arbitral forum."  *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 381 (10th Cir. 2016) (quoting *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 n.4 (10th Cir. 1999)).  Plaintiff states that the Brochure provides that defendant "will pay up to $1500 to cover the cost of [plaintiff's] attorney's fees (which payment [plaintiff] will receive even if [he is] ultimately unsuccessful on [his] claims, provided the arbitrator does not determine that [his] claims were frivolous)" and that plaintiff "may be able to receive payment for all of [his] attorney's fees, depending on the outcome of the case and the decision by the arbitrator."  Docket No. 21 at 14 (quoting Docket No. 11-3 at 5-6).  Plaintiff does not explain why the standard in the Brochure is inconsistent with his statutory rights since attorney's fees are far from a mere possibility.  Plaintiff concedes he will receive at least some of his attorney's fees even if he is not successful, and nothing in the Brochure prohibits or definitively limits an award of statutorily prescribed fees.  Accordingly, this is insufficient to render the arbitration agreement unenforceable.[5]

---

[5]  Several courts have ruled that the Comcast Solutions Program is a fair and enforceable arbitration procedure.  *See Bush v. Comcast Cable Commc'ns. Mgmt., LLC*, 2020 WL 4199077, at *8 (W.D. Pa. July 22, 2020) (applying Pennsylvania law); *Azeveda v. Comcast Cable Commc'ns. LLC*, 2019 WL 5102607, at *7 (N.D. Cal. Oct. 11, 2019) (applying California law); *Lancaster v. Comcast Cable Commc'ns. Mgmt. LLC*, 2017 WL 3616494, at *5 (E.D. Mich. Aug. 23, 2017) (applying Michigan law); *Whitehead v. Comcast Corp.*, 2015 WL 13744598, at *4 (W.D. Tenn. Dec. 14, 2015) (applying Tennessee law).

Defendant has successfully demonstrated plaintiff entered a valid arbitration agreement, and plaintiff has failed to demonstrate any reason why that agreement should not be enforced.

Next, the Court determines whether plaintiff's claims fall within the scope of the agreement. *Mitsubishi*, 473 U.S. at 626. The Program requires arbitration of "workplace legal disputes that would otherwise be heard in a court of law," including claims for "back pay, commissions or failure to pay overtime, claims for discrimination based on race, gender, age, religion, disability or any other protected class, and claims for sexual or other types of unlawful harassment." Docket No. 11-3 at 4. Outside of stating no agreement to arbitrate exists, plaintiff does not dispute that the Program would cover plaintiff's claims. Docket No. 21 at 6. The Court finds a valid arbitration agreement exists and applies to each of plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Dismiss Complaint or, in the Alternative, to Compel Arbitration and Dismiss Complaint [Docket No. 11] is **GRANTED in part and DENIED in part**. That portion of defendant's motion seeking to compel arbitration is **GRANTED**. It is further

**ORDERED** that all claims against defendant are **DISMISSED without prejudice**.

It is further

**ORDERED** that this case is closed.

DATED March 2, 2023.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge